PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| ASHLEY MARRIOTT, | ) | |
| | ) | CASE NO.  4:22-CV-00965 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| DEPUTY JONATHAN PERSING, *et al.*, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | [Resolving ECF No. 31] |


Pending before the Court is Defendants' Motion for Summary Judgment (ECF No. 31).

The matter has been fully briefed.  Having reviewed the record, including the parties' briefs,

applicable law, and body camera footage of the events leading up to the arrest, the Court grants

Defendants' Motion for Summary Judgment.

## I. Background

Plaintiff Ashley Marriott filed this § 1983 case alleging civil rights violations after

Defendants Deputy Jonathan Persing and Sergeant James Touville arrested her on June 5, 2020

for domestic violence.  ECF No. 1.  Prior to her arrest, Plaintiff was in an "on-and-off again"

romantic relationship with Michael Abbott that began in 2016.  ECF No. 27-1 at PageID #: 134.

During their relationship, the two were engaged and lived together at various times within the past

four years.  ECF No. 27-1 at PageID #: 121, 124–25.

Plaintiff actively participated in horse shows and expected to compete in one at the

Canfield Fairgrounds throughout the weekend of June 5, 2020.  ECF No. 27-1 at PageID #: 126.

In May of 2020, Plaintiff invited Mr. Abbott to the Canfield Fairgrounds horseshow, but she

(4:22-CV-00965)

revoked the invitation the day before the horseshow began.  ECF No. 27-3 at PageID #: 199, 202, 206.

　　　　Against Plaintiff's wishes, Mr. Abbott arrived at the fairgrounds on June 5, 2020 around 5:00 p.m. and placed food and drinks into Plaintiff's unlocked trailer while she competed in the horseshow.  ECF No. 27-3 at PageID #: 204, 206; ECF No. 27-1 at PageID #: 150.  After Plaintiff finished competing around 8:00 p.m. that evening, Mr. Abbott met with Plaintiff.  ECF No. 27-3 at PageID #: 218.  The two began arguing about Mr. Abbott's presence at the fairgrounds.  ECF No. 27-1 at PageID #: 132–33.  Plaintiff subsequently made two 911 calls around 10:00 p.m. to report Mr. Abbott for not leaving her alone.  ECF No. 31-1.

　　　　Defendants Deputy Persing and Sergeant Touville responded to the 911 calls and arrived at the fairgrounds around 10:30 p.m.  ECF No. 30 at 00:00-00:20 (Sergeant Touville Body Camera Video).  Upon arrival, Plaintiff directed the officers towards Mr. Abbott, who was seated in a lawn chair near her trailer.  ECF No. 30 at 00:28-01:25 (Sergeant Touville Body Camera Video).  While Plaintiff was within earshot, Deputy Persing began questioning Mr. Abbott.  ECF No. 30 at 01:20-01:30 (Sergeant Touville Body Camera Video).  After a short period of questioning, Deputy Persing pointed his flashlight at Mr. Abbott and asked Mr. Abbott to turn his head after noticing blood on Mr. Abbott's neck.  ECF No. 30 at 01:20-01:45 (Sergeant Touville Body Camera Video).  Without hesitation, Mr. Abbott responded with "oh, this is her.  The scratch marks, that's her.  The scratch marks that you're looking at, that's her that grabbed me by the face.  The scratch marks, that's her."  ECF No. 30 at 01:45-02:00 (Sergeant Touville Body Camera Video).  Mr. Abbott then demonstrated how Plaintiff scratched him.  ECF No. 30 at 01:45-02:00 (Sergeant Touville Body Camera Video).

(4:22-CV-00965)

Despite Mr. Abbott and Plaintiff's denial that there was violence, Sergeant Touville proceeded to ask how Mr. Abbott got the scratch marks.  ECF No. 30 at 02:20-02:40 (Sergeant Touville Body Camera Video).  At which point, Plaintiff emphasized that "[she doesn't] even think that they're scratch marks." ECF No. 30 at 02:30-02:40 (Sergeant Touville Body Camera Video). Plaintiff's remark sparked an argument between her and Mr. Abbott regarding whether Plaintiff grabbed Mr. Abbott's face.  ECF No. 30 at 02:35-02:50 (Sergeant Touville Body Camera Video). Sergeant Touville interrupted the argument and again asked Mr. Abbott if Plaintiff caused the scratch marks.  ECF No. 30 at 02:50-03:00 (Sergeant Touville Body Camera Video).  At this point, Mr. Abbott began to recant his accusation asserting that "[he] won't say that" and "there was no domestic."  ECF No. 30 at 02:55-03:20 (Sergeant Touville Body Camera Video).  Sergeant Touville then informed Mr. Abbott that he had already given one story and telling law enforcement a "bad story" is considered "obstructing." ECF No. 30 at 03:00-03:15 (Sergeant Touville Body Camera Video).

Plaintiff then accused Mr. Abbott of throwing beer at her trailer, which inspired Sergeant Touville to follow Plaintiff to her trailer while Deputy Persing spoke with Mr. Abbott.  ECF No. 30 at 04:30-04:50 (Sergeant Touville Body Camera Video).  While Sergeant Touville was examining Plaintiff's trailer, she confirmed that Mr. Abbott neither committed any violence towards her nor damaged her trailer.  ECF No. 30 at 04:50-05:15 (Sergeant Touville Body Camera Video).  Nonetheless, Plaintiff maintained that she wished for Mr. Abbott to leave the fairgrounds. ECF No. 30 at 05:10-05:30 (Sergeant Touville Body Camera Video).  Sergeant Touville inquired into her relationship with Mr. Abbott, and Plaintiff confirmed that they were in an on-and-off again relationship throughout the past four years and had lived together at various points during this time.  ECF No. 30 at 03:55-04:05, 06:15-06:40, 08:50-09:45 (Sergeant Touville Body Camera

3

(4:22-CV-00965)

Video).  Subsequently, Sergeant Touville informed Plaintiff that she was under arrest for domestic

violence due to Mr. Abbott's claim that she scratched him.  The officer handcuffed Plaintiff.  ECF

No. 30 at 10:20-11:00 (Sergeant Touville Body Camera Video).[1]

Plaintiff brought this action claiming that Defendants are liable for arresting her without

probable cause and violating her procedural due process rights.  Defendants then filed a Motion

for Summary Judgment arguing that all of Plaintiff's claims should be dismissed because body

camera footage shows that Defendants had probable cause to arrest Plaintiff, thus Defendants did

not violate Plaintiff's constitutional rights.  *See* ECF No. 31.  Plaintiff agrees that the body camera

footage is undisputed.  *See* ECF No. 26 (Joint Proposed Undisputed Facts).  Nonetheless, Plaintiff

filed a response maintaining that Defendants are liable for violating her Fourth and Fourteenth

Amendment rights when they wrongfully arrested her.  Plaintiff, therefore, argues that the Court

should deny Defendants' motion for summary judgment.  ECF No. 32.

## II. Standard of Review

Federal Rule of Civil Procedure 56(a) instructs courts to grant summary judgment only "if

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In other words, "after adequate time for

discovery and upon motion, [the Court will enter summary judgment] against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.

*Scott v. Harris*, 550 U.S. 372, 380 (2007).  In determining whether a factual issue is "genuine,"

---

[1] The domestic violence charge was eventually dropped at Mr. Abbott's written request.  ECF No. 27-3 at PageID #: 213.

4

(4:22-CV-00965)

the Court assesses whether the evidence is such that a reasonable jury could find that the non-moving party is entitled to a verdict.  *Id.*

  To survive summary judgment, "the non-moving party must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Baker v. City of Trenton*, 936 F.3d 523, 529 (6th Cir. 2019) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute.  The non-moving party must go beyond the pleadings to designate specific facts found in the record that demonstrate genuine issues for trial, which may include affidavits, declarations, depositions, answers to interrogatories, or admissions on file.  *Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(c)); *see also KSA Enterprises, Inc. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 464 (6th Cir. 2019). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 613 (6th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  In analyzing a motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party." *Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018) (citing *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017)).

### III. Discussion

  Plaintiff commenced this lawsuit under 42 U.S.C. § 1983.  Section 1983 creates no substantive rights; rather, it "provides remedies for deprivations of rights established

5

(4:22-CV-00965)

elsewhere." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985).  To prevail under the statute, Plaintiff must prove "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Doe v. Miami Univ.*, 882 F.3d 579, 595 (6th Cir. 2018) (quoting *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 562 (6th Cir. 2011)).  In the case at bar, Plaintiff alleges that Deputy Persing and Sergeant Touville violated her Fourth and Fourteenth Amendment rights when they wrongfully arrested her, thereby committing an unreasonable seizure.  Furthermore, Plaintiff brings a municipal liability claim asserting that Mahoning County caused these constitutional deprivations.

### A. Fourth Amendment Claim

In Count One of the Complaint, Plaintiff asserts a § 1983 claim under the Fourth Amendment for arrest without probable cause.  The Fourth Amendment protects individuals from unreasonable searches and seizures and provides a constitutional right to be arrested only upon an establishment of probable cause.  *See* U.S. CONST. AMEND. IV; *United States v. Torres-Ramos*, 536 F.3d 542, 554 (6th Cir. 2008).  "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020) (quoting *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)).  "Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Arnold v. Wilder*, 657 F.3d 353, 363 (6th Cir. 2011) (internal quotation marks omitted).  "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007).

6

(4:22-CV-00965)

Defendants Deputy Persing and Sergeant Touville arrested Plaintiff for domestic violence pursuant to Ohio Revised Code § 2919.25(A).  Section 2919.25(A) states that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."  The statute provides that a "[f]amily or household member" includes "a person living as a spouse."  Ohio Rev. Code § 2919.25(F)(1)(a)(i).  More specifically, a "[p]erson living as a spouse" includes "a person . . . who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question."  Ohio Rev. Code § 2919.25(F)(2).  Ohio Revised Code § 2901.01(A)(3) defines "[p]hysical harm to persons" as "any injury . . . regardless of its gravity or duration."  It is Ohio's preferred policy to make an arrest when an officer has "reasonable grounds to believe that the offense of domestic violence . . . has been committed and reasonable cause to believe that a particular person is guilty of committing the offense."  Ohio Rev. Code § 2935.03(B)(3)(b).

In another case, the Sixth Circuit addressed a claim similar to Plaintiff's.  In that case, Sergeant Bosley ordered Officers Elias and Stack to arrest Thacker for committing domestic violence against Gallagher.  *Thacker v. City of Columbus*, 328 F.3d 244, 256 (6th Cir. 2003).  The officers were initially called to Thacker's apartment because Thacker had been severely cut.  *Id. at 249*.  On arrival, the officers noticed severe bruises on Gallagher's body and learned that Gallagher and Thacker lived together.  *Id. at 256*.  When questioned, Gallagher gave conflicting stories about how she had received the bruises.  *Id. at 257*.  Gallagher eventually confirmed that Thacker caused her bruises.  *Id.*  As a result, Sergeant Bosley determined that the officers had sufficient probable cause to arrest Thacker.  *Id.*  Although the initial call pertained to Thacker's injury and Gallagher maintains that she never admitted to Thacker causing her bruises, the court determined that the officers had probable cause to arrest Thacker.  *Id.*  The Sixth Circuit explained

(4:22-CV-00965)

that "even crediting Gallagher's statement that she never confessed . . . information that the pair had argued that night, the broken bottle and disarray of the apartment, Gallagher's bruises and her oft-changing story, combined with Ohio's preferred arrest policy appear, at least minimally, to support a finding of probable cause." *Id.*

Defendants Deputy Persing and Sergeant Touville maintain that they had probable cause to arrest Plaintiff. ECF No. 31 at PageID #: 345–46. The officers were called to the fairgrounds because Plaintiff and Mr. Abbott were involved in a dispute. ECF No. 31-1. When the officers arrived at the scene, Deputy Persing noticed blood on Mr. Abbott's neck. ECF No. 30 at 01:20-01:45 (Sergeant Touville Body Camera Video). Mr. Abbott then immediately accused Plaintiff of scratching him. ECF No. 30 at 01:45-02:00 (Sergeant Touville Body Camera Video). Shortly after making the accusation, Mr. Abbott attempted to recant his earlier account of events. ECF No. 30 at 02:55-03:20 (Sergeant Touville Body Camera Video); *cf. Thacker*, 328 F.3d at 257 (explaining that Gallagher's conflicting stories did not affect the officers' finding of probable cause for arrest). As the officers continued the questioning, they learned that Plaintiff and Mr. Abbott had been in an on-and-off again relationship for the past four years and had cohabited during that time. ECF No. 30 at 03:55-04:05, 06:15-06:40, 08:50-09:45 (Sergeant Touville Body Camera Video).

Plaintiff argues that the officers knowingly and willfully ignored potential exculpatory evidence when they failed to consider Mr. Abbott's attempted recantation. ECF No. 32 at PageID #: 474–75. It is true that officers "cannot simply turn a blind eye" to exculpatory evidence. *Courtright v. City of Battle Creek*, 839 F.3d 513, 521 (6th Cir. 2016). But "[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Jones v. Clark Cnty.*, 959 F.3d 748, 757 (6th Cir. 2020)

8

(4:22-CV-00965)

(quoting *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999)).  Therefore, as in *Thacker*, the totality of the circumstances, including Plaintiff and Mr. Abbott arguing the night of the arrest, Mr. Abbott's wounded neck, and Mr. Abbott's changing story, coupled with Ohio's preferred arrest policy, support the officers' finding of probable cause for Plaintiff's arrest.

The Court finds that Deputy Persing and Sergeant Touville did not violate Plaintiff's Fourth Amendment rights because they had probable cause to arrest Plaintiff.  Therefore, the Court grants summary judgment on Count One in favor of Defendants.

### B. Fourteenth Amendment Claim

In Count One of the Complaint, Plaintiff also asserts a § 1983 claim under the Fourteenth Amendment, arguing that Defendants violated her procedural due process rights when they arrested her.  ECF No. 32 at PageID #: 471–72.  Given the facts and circumstances of this case, however, Plaintiff's argument is misplaced.  The "Fourteenth Amendment does not apply in evaluating whether an officer has probable cause for an arrest," rather, "it is the Fourth Amendment which establishes procedural protections in this part of the criminal justice area." *Kinlin v. Kline*, 749 F.3d 573, 579 (6th Cir. 2014) (internal quotation marks omitted).  Accordingly, the Court need not conduct a Fourteenth Amendment analysis because the Fourteenth Amendment is inconsequential to the Court's ruling in favor of Defendants on Count One. [2]

### C. Municipal Liability Claim

In Count Two of the Complaint, Plaintiff asserts a § 1983 claim under *Monell*.  To prevail on a *Monell* claim, Plaintiff "must demonstrate that the alleged federal violation occurred because

---

[2] The Court also need not address Defendants' qualified immunity defense, because Plaintiff has not sustained her burden of establishing a deprivation of her a constitutional right.

9

(4:22-CV-00965)

of a municipal policy or custom." *Burgess v. Fischer,* 735 F.3d 462, 478 (6th Cir. 2013); *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978).  A prerequisite to establishing liability under *Monell* is that there must be an underlying constitutional violation.  *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014).  As ruled above, there is no constitutional violation.

Additionally, Defendants properly argue that counties, as political entities, are not *sui juris* and are held accountable through their elected representatives.  *See Kinsey v. Cnty. of Lorain*, No. 1:17 CV 2412, 2019 U.S. Dist. LEXIS 10871, 2019 WL 315055, at *8 (N.D. Ohio Jan. 23, 2019), *aff'd sub nom. Kinsey v. Ohio*, 801 F. App'x 396 (6th Cir. 2020).  Therefore, Plaintiff should have brought this claim against Mahoning County's board of commissioners instead of Mahoning County itself.  Nevertheless, even if Plaintiff had named the proper defendants, because the Court has ruled that Defendants did not violate Plaintiff's constitutional rights, the Court now finds that Plaintiff's *Monell* claim cannot survive as a matter of law.[3]  Accordingly, the Court also grants summary judgment in favor of Defendants on Count II.

### IV. Conclusion

For the reasons set forth above, the Court hereby grants Defendants' Motion for Summary Judgment (ECF No. 31).


        IT IS SO ORDERED.


 June 30, 2023                                                      */s/ Benita Y. Pearson*
 Date                                                      Benita Y. Pearson
                                                      United States District Judge

---

[3] Given that the Court finds that there was no constitutional violation, it need not reach a determination on punitive damages.

10